Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

# UNITED STATES DISTRICT COURT
for the
Eastern District of Virginia

Richmond Division

FILED
JUL 15 2022
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

L. Douglas Wilder
_____
Plaintiff(s)
(Write the full name of each plaintiff who is filing this complaint.
If the names of all the plaintiffs cannot fit in the space above,
please write "see attached" in the space and attach an additional
page with the full list of names.)

-v-

Michael Rao
Fotis Sotiropoulos
Jacob Belue
James Burke
_____
Defendant(s)
(Write the full name of each defendant who is being sued. If the
names of all the defendants cannot fit in the space above, please
write "see attached" in the space and attach an additional page
with the full list of names.)

Case No. 3:22cv498
(to be filled in by the Clerk's Office)

Jury Trial: (check one)  ☑ Yes  ☐ No

## COMPLAINT FOR A CIVIL CASE

I.  **The Parties to This Complaint**

   A.  **The Plaintiff(s)**

   Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

   Name: L. Douglas Wilder
   Street Address: 301 Virginia St. #601
   City and County: Richmond
   State and Zip Code: VA 23219
   Telephone Number: 404-381-3483
   E-mail Address: LDWILDER@VCU.EDU

   B.  **The Defendant(s)**

   Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title (if known). Attach additional pages if needed.

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

Defendant No. 1
- Name: Michael Rao
- Job or Title (if known): President, VCU
- Street Address: 202 N. 9th St. (Office of the Attorney General)
- City and County: Richmond
- State and Zip Code: VA 23219
- Telephone Number: 804-786-2435
- E-mail Address (if known): president@vcu.edu

Defendant No. 2
- Name: Fotis Sotiropoulos
- Job or Title (if known): Provost, VCU
- Street Address: 202 N. 9th St. (Office of the Attorney General)
- City and County: Richmond
- State and Zip Code: VA 23219
- Telephone Number: 804-786-2435
- E-mail Address (if known): sotiropoulosf@vcu.edu

Defendant No. 3
- Name: Jacob Belue
- Job or Title (if known): University Counsel, VCU
- Street Address: 202 N. 9th St. (Office of the Attorney General)
- City and County: Richmond
- State and Zip Code: VA 23219
- Telephone Number: 804-786-2435
- E-mail Address (if known): jabelue@vcu.edu

Defendant No. 4
- Name: James Burke
- Job or Title (if known):
- Street Address: 3705 Shore Drive
- City and County: Rich
- State and Zip Code: VA 23225
- Telephone Number: 804-690-5359
- E-mail Address (if known):

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

L. DOUGLAS WILDER
    Plaintiff,

v.

MICHAEL RAO,
President of Virginia Commonwealth
University, In His Official Capacity;
FOTIS SOTIROPOULOS,
Provost of Virginia Commonwealth
University, In His Official and Individual Capacity;
JACOB BELUE, Deputy Attorney General,
assigned to Virginia Commonwealth
University, in His Official and Individual Capacity;
and JAMES BURKE in His Individual Capacity

    Defendants.

## COMPLAINT
### (Jury Trial Requested)

1.    This action is brought under 42 U.S.C. § 1983 and 42 U.S.C.§2000e. The Plaintiff, Douglas Wilder ("Plaintiff") is employed with Virginia Commonwealth University ("VCU") as a Distinguished Professor in the School of Government and Public Affairs.

2.    Wilder sues Michael Rao, named Defendant, in his official capacity with VCU; the two named Defendants, Fotis Sotiropoulos, and Jacob Belue in their official capacity and individual capacity with VCU, seeking declaratory, preliminary, injunctive relief, and attorney's fees and costs against those defendants and effectively against VCU from the named Defendants at VCU in their official capacity for tolerating, encouraging and participating with Defendant Burke and not contacting Plaintiff Wilder personally, or having any connecting with contacting him by any means of communication.

1

practice in Churchill, the east end of Richmond where no law office had ever existed. He reestablished the operation of The Richmond Chapter of The Old Dominion Bar Association, The Predominant African American Bar in Virginia, which had been inactive. He was one of the five founding members of the Richmond Criminal Bar.

17. He was recognized as a top trial lawyer and became the first African American listed in Martindale-Hubbell directory.

18. He was the founder and first Chairman of the Virginia Black Caucus; as well as the Legislative Black Caucus of Virginia.

19. In 1969, he was elected to serve in the Virginia State Senate, becoming the first Black person to serve in that body since Reconstruction.

20. In the Senate, he became Chairman of several committees at alternating intervals: The Committee on Rehabilitation and Social Services, The Committee on Transportation, The Committee on Privileges and Elections, The Senate Steering Committee, and also on the Committee on Rules.

21. In 1985 he was elected Lt. Governor of Virginia, becoming the first African American in Virginia so to do and second in the nation. In 1989, he was elected Governor of Virginia, becoming the first such elected governor in our nation's history.

22. His administration led to Virginia being recognized as the best fiscally managed state in the nation for two successive years.

23. He was also recognized as appointing more women, young people, and minorities to positions in government than any other administration.

24. He has received numerous honorary degrees from Colleges and Universities,

buildings named in his honor, and awards from many Bar Associations from across the nation.

25. On Sunday, January 30* at 7:51pm Plaintiff received the following message from 804-690-5359 which is the cell phone number of James (Jim Burke) a former employee of the Wilder School of Government and Public Affairs at VCU, who was the Director of one of the centers at institutes therein, the Performance Management Group (PMG). Another employee of the Wilder School, Linda Pierce, Associate Director of PMG was included on the text message. TEXT Message received by Plaintiff Wilder from Defendant Burke.

"Wow, What a shit show. It will be four years of disaster. I am so disappointed on anyone who thought he was a better choice. Pure stupidity. I am beyond disgusted and disappointed in anyone who could have missed the obvious. Welcome the Nazis. I have no respect for anyone who supported him. TM may not have been great. I get that. But this???? WTF. Is this what you wanted, Doug? I can't believe you fell for it. You fucked up badly. And now we will have to clean it up I am tired of cleaning up for people. I now have to tell scholars not to talk about what is real? Trust me, these jerks will come after me for teaching history. They will come after my Black colleagues for saying what is true. I will not capitulate to these people. Someone has to stand up. Will you stand up with me?"

On January 31, 2022, Defendant Burke sent the following text message to Plaintiff:

"I owe you a huge apology, Gov. I am so frustrated but had no right to speak that way. I hope you will accept my sincere apology. I screwed up."

On February 2, 2022, at approximately 11:58pm, Defendant Burke sent a text message to Robyn McDougle (Jim Burke's supervisor), which was forwarded to Dean Susan Gooden by Robyn on Thursday, February 3, 2022, at 10:43am.

"I reviewed my texts to Doug. I shuddered thinking what I might read. However, I am good with it. I rescind any apologies. I stand by what I said. I was right. I offered him apologies I should never have offered. I think of the nasty abuse I had to endure from him in the RVA case. I will give into people like him no more. If he tries to make things worse, he will find himself in a bad place. Remember, we went through this with Stern's husband. And I won. He just does not like to be told he was wrong. He does. It want to mess with me. I know too much and will use it. "Does not" I hate putting Susan in an awkward place but sometimes we need to stop dancing around narcissists and start to manage them. Just so you have all the info. Transparency is a good thing. No apologies. If he can dish it out, he has to learn to take it and not go running to Susan. No man would do that." (25 and 26)

26. In November 2021, a Statewide election was held in Virginia for Governor, Lt. Governor, Attorney General and some members of the legislature.

27. The Republican candidates won the three statewide offices plus control of the House of Delegates. The former Governor, Terry McAuliffe, sought to be returned to the Governorship, but was defeated, along with the Democrat candidates for Lt. Governor and Attorney General.

28. Plaintiff Wilder was elected to the Virginia State Senate in 1969, as a Democrat; he was elected as Lt. Governor in 1985 as a Democrat and was elected as Governor in 1989 as a Democrat.

29. Plaintiff Wilder was also elected as Mayor of the City of Richmond in 2004 as a Democrat.

30. In the 2021 election for Governor, Plaintiff made NO endorsements of any

candidates for Governor, Lt. Governor, Attorney General, or the state legislature.

31. Plaintiff Wilder is associated with the Commonwealth Poll conducted by The Wilder School of Government and Public Affairs at Virginia Commonwealth University, wherein Susan T. Gooden is the Dean.

32. Dr. Robyn McDougle is the Director of the Commonwealth Poll.

33. The polls taken prior to the November 2021 election in Virginia indicated that it was going to be a close race, with McAuliffe holding a slight edge, but within the percentage error of plus or minus 4.

34. Plaintiff Wilder had written in his Wilder Visions post that no Democrat candidate for statewide office in Virginia would be successful without strong support from the African American voters.

35. Seemingly, to that end, numerous elite political office holders, and luminaries were invited to campaign for the Democrats, and indeed did so on several occasions.

36. Candidate McAuliffe never sought nor asked for Plaintiff's support in his efforts; nor did anyone do so on his behalf.

37. Wilder has long maintained that no one's vote should be taken for granted, particularly African American voters who usually support Democrats.

38. Following the prescribed Code of Conduct for employees at VCU, Plaintiff Wilder relayed the text messages received from Defendant Burke to Dean Gooden for next step determination.

39. On Feb 2, 2022, Dean Gooden, upon receiving copies of these messages received

by Plaintiff Wilder, sent an email to Defendant Jacob A. Belue, and Defendant, Fotis Sotiropoulos.

"Dear Jake,

As a follow up to our meeting today, as you suggested, I spoke with Governor Wilder to ask him whether he viewed the text message from Jim Burke as harassment or misconduct. Governor Wilder's response is the following.

"I view the text message as not only harassment but also threatening. It is part of a larger pattern of such behavior at VCU which is condoned by President Rao."

Best,

Susan

On Feb 9, 2022, Dean Gooden sent an email, titled "Official Complaint of Fear, Harassment and Intimidation" to Chelsey A McCarty cc: John A. Venuti, Fotis Sotiropoulos, LDWilder, Jacob A. Belue

"On February 1 at approximately 10am, Governor Wilder notified me that he received the following text message. He reported receiving the message on his cell phone on Sunday, January 30th at 7:51 p.m. from 804-690-5359, which is the cell phone of James (JIM) Burke, a then-employee of the Wilder School, who was the director of the Performance Management Group (PMG). Governor Wilder also reported that another employee of the school, Linda Pierce, Associate Director of PMG was included on the text message."

She recites the text message received by Plaintiff Wilder from Burke referenced herein, above.

This text put me in a great amount of fear because all of the statements aforementioned are open and I have no understanding of what he meant. The statement Jim made related to the

8

Nazis generated a thought of fear and violence as we all are aware that the Nazis killed a lot of Jewish people in their zeal to be right. It appears from Jim's statements that he is determined to be right at all costs which puts me in fear of my personal safety. Further, in his second text he stated that "I rescind any apologies. I stand by what I said. I was right. I offered him apologies I should never have offered."

This demonstrates to me that Jim was fully aware of his statements and even after an opportunity to cool off, Jim doubled-down on the statements he had previously made related to Governor Wilder. The first text is very concerning and the second text even more so because he mentioned me specifically by name.

On Friday evening, February 4, 2022, Jim's VCU email and communications access were cut off by IT. This is when my fear level escalated because I did not know what Jim was capable of after his communications access was removed. The fact that Jim had no line of communication to the school made me think that his only other option was to come to the school to communicate any action or act as a result of the abuse he perceived he suffered from Governor Wilder. I felt that if he could not find Governor Wilder, he would use me as a target to release all of the frustrations that he felt.

When I received the communication related to what Jim had stated in his text, I felt that this was one of the worse forms of verbal harassment that I have ever received since joining VCU..."

  40. Defendant Burke's in his message to Plaintiff Wilder expressed fear that his "Black" colleagues would be somehow threatened injects the issue of race for no stated reason. One would have to assume that the "Nazis" would be a threat to them.

  41. Insinuation of race in matters of importance is not new at VCU, in fact, it is

9

practiced and promoted by defendant Rao for reasons best known to him. The fact that Rao promised black contractors $300 million dollars in construction set asides if the community would support his ideas of construction of a new coliseum was not only undoable, but it was declared illegal by the Supreme Court of the United States in the case arising from the City of Richmond in 1989 entitled City of Richmond v. J.A. Croson Co. VCU had legal advisers then; One would have to assume that his lawyers gave the proper advice, but it was ignored; or that they did not advise President Rao. The fact that Dean Gooden and Plaintiff both are African American is well known to Defendants, all.

42. On February 8, 2022, Dean Gooden sent an "intent to terminate" letter to Defendant Burke by courier.

43. On February 9, 2022, Dean Gooden met with Defendants Belue and Sotiropoulos informing them of the intent to terminate letter being sent to Defendant Burke, to which Defendant Sotiropoulos replied, "You did what? How can we undo this?" This raises the question, why was Defendant Sotiropoulos shocked to the extent that he wanted to undo what Dean Gooden had done in her official capacity?

44. Dean Gooden referenced the Threat Assessment Team (TAT) letter which stated,

"The current information available does not seem to indicate any specific physical threats to individuals or groups of individuals." She points out therein; a group is a set of people who have the same interests or aims or organizes themselves to work together. I do not fully understand how the Wilder School would not be considered a group of people based on me and my colleagues who work therein. They would not be isolated from any danger that could be visited on the school as a result of Jim Burke's anger related to the aforementioned issues. Also, I do not understand how a conclusion could be drawn that no individual is in a threatened position. Further, noting in the TAT letter states why Jim's terroristic threats aimed at me or Governor Wilder do not rise to the level of a credible threat to me or Governor Wilder based on the tenor of both texts and the context by which they are written. The letter draws a conclusion to a complicated matter without focusing on the facts and the totality of the circumstances. In conclusion, I am not in agreement with the assessment provided to me by

the TAT. I have memorialized this in writing because anytime someone makes a threat as Jim Burke did in working school of government, and doubles down on the threat as he did in his second text listed above, I view that as a credible threat that has to be managed properly. This is why I am not quick to dismiss Jim's actions as non-threatening. I received a protective order on Friday, February 11, 2022, from the Commonwealth of Virginia based on the letter of complaints of fear, harassment, and intimidation that I submitted to the VCU Police on February 9, 20222 based on this incident. If a sitting judge with a high level of competence related to such matters as this would immediately order a protective order based on a one-page letter stating the facts and not providing the totality of the circumstances, I cannot understand how the Threat Assessment Team could arrive at the conclusion that Jim Burke's actions do not present a clear and present danger to me, Governor Wilder, and VCU. I am requesting a written response from TAT to provide substantially more details and elaboration upon which the position of the committee is based."

45. On Sunday, February 13, 2022, Plaintiff Wilder wrote H. Dendy, Rector of the Board of Visitors at VCU requesting his intervention.

46. Defendants Belue and Sotiropoulos requested additional time in delaying the termination of Defendant Burke.

47. On Tuesday, February 15, 2022, Dean Gooden replied to Cathleen Burke, copying Jacob Belue, University Counsel, relative to Cathleen Burke's request to delay Defendant Burke's termination.

48. On February 24, 2022, Defendant Jacob A. Belue wrote:

"Thanks Susan and all. I appreciate your willingness to consider advice from our office in making your decisions."

The advice referenced by defendant Belue has to be legal advice because he at the time served as interim University Counsel to the Wilder School and Dean Gooden. The advice he gave was that he reached out to Burke's attorney to ask for a meeting with Franklin Wallace, HR Director of the Wilder School, and Tim Davey, Vice Provost at VCU so they could hear whatever Jim Burke would like to present. To which Dean Gooden responded to Defendant Belue, inter alia,

"therefore, we are requesting that you review the documentation and provide us with the necessary legal analysis to ensure that you can defend the termination letter as written or make necessary changes and forward the letter back to our attention. In conclusion, please let us know what steps in the process of termination that we have not included in our letter to terminate Burke."

49. This email was followed by one from Defendant Fotis Sotiropoulos on February 23, 2022. "Thank you Jake. I agree with you. Susan and Franklin, I will be most grateful if you can wait until you get Jake's input. Many thanks for your patience."

50. According to VCU Policy and the "intent to terminate" letter, Defendant Burke requested a meeting with Franklin Wallace, Tim Davey, Provost Office, and Defendant Belue; however, the meeting was never scheduled for reasons unknown. The lack of transparency and violation of VCU Policy indicates that the named defendants conspired to obstruct and undermine Dean Gooden's authority to terminate Burke, in an effort to protect him.

51. Defendant Wilder has continually requested an unbiased independent investigation which has consistently been denied.

52. On May 4, 2020, Defendant Wilder was informed by Rector Dendy that University Officials and Defendant Belue hired an outside law firm, Jackson Lewis P.C. to investigate the matter, and were negotiating a settlement with Defendant Burke.

53. On May 5, 2022, Franklin Wallace wrote Dean Gooden and Governor Wilder after he was able to reach Defendant Belue "via his cell phone to get an update as to where we are with the Jim Burke case.

> "Belue shared with me that he is working on an agreement with Burke to resign from his position, and he expects and he expects Burke to submit his resignation within the next few days or early next week. He acknowledged that this has taken some time due to Jim Burke submitting several claims that counsel is trying to resolve in

12

order to get his resignation... When I asked about why we have not been receiving information on this matter, Belue said that other folks in the VCU administration are in touch with Governor Wilder and have been providing him updates and information from that side, but that Dean Gooden can now reach out to him (Belue) directly as well. He said that he wants us to be aware of what is going on but not in the middle of this. I emphasized that I am aware that Governor Wilder remains dissatisfied with this entire process and that we hope to hear something within the next week." I have copied Jacob Belue on this email to confirm my understanding of what he shared with me. Jake – please clarify any discrepancies or inaccuracies in the summary I shared above. Thanks, FW."

54. On Friday, May 13, 2022, Plaintiff Wilder appeared before the Board of Visitors, President Rao and Fotis Sotiropoulos, addressing the BOV relative to this matter, the lack of transparency in the process, and the administration's failure to conduct an investigation, and to protect Plaintiff Wilder.

55. On May 31, 2022, Jason S. Miyares, Attorney General, sent an official letter to Defendant Rao with a copy to Dean Gooden:

"Dear President Rao, I have reviewed documents, text messages, and other information on the Burke matter. Based on Dr. Burke's extraordinarily unprofessional and ultimately threatening behavior toward Governor Wilder and Dean Gooden, the university was within its rights to terminate Dr. Burke. Under the present circumstances, I cannot approve the proposed settlement of this matter."

56. Nothing could be clearer from this communication written by the Attorney General to Defendant Rao, that Defendant Belue and others, obstructed the termination of Defendant Burke.

57. On Friday, June 17, 2022, Plaintiff Wilder was forwarded an email from Dean Gooden sent to her by Defendant Belue also sent to Defendant Fotis Sotiropoulos. Burke's attorney had requested assistance of Defendant Belue in exacting demands of Dean Gooden and Plaintiff Wilder demanding that they cease and desist from whatever it was that they had done, specifically Wilder, as Defendant Burke had "**gone through enough thanks to Governor**

**Wilder."** There was seeming concurrence by Belue and Burke's attorney that Burke had "resigned", contrary to that which was expressed in the communication from Miyares.

58. The email did not state what Wilder had done, nor why Defendant Belue was obliged to follow through on her dictates, nor was any explanation furnished.

59. No one representing VCU, officially or otherwise, has contacted plaintiff Wilder relative to investigating and resolving any action taken as a result of threats made by Defendant Burke. On June 17, 2022, Dean Gooden sent Plaintiff an email from Defendant Jacob A. Belue to Defendant Fotis Sotiropoulos and Dean Gooden that was written by Barbara Queen, Attorney of Defendant Burke.

**"Jake good morning. I am processing how to help the both the University and Dr. Burke continue on in a manner that is beneficial to both parties. While the matters relating to Dr. Burke are on semi hold at the moment. I am requesting that the Provost, Dr. Gooden, and the University not communicate at all with the staff a regarding his employment status. He resigned and retired. Nothing else should be communicated to the staff about his employment status. I am requesting that there be no communication that could be interpreted that he has done anything improper to allow him to continue looking for work. Nothing directing that his employment is an HR Matter or requesting that everything go through the provost's office, strictly that he retired. Any other type of communication relating to Dr. Burke would certainly be highly unusual and would raise suspicions.**
**He has certainly gone through enough thanks to Governor Wilder.**
**Let me know if you have any questions. "**

This email encapsulates and directly shows that Defendant Burke's attorney utilized the services of Defendant Belue to join in communicating that Wilder had damaged Burke, without any allegation of what those actions were, nor did Defendant Belue indicate in his messaging what role he was playing other than following the dictates of Burke's attorney. Defendant Belue has clearly demonstrated that he was obliged to follow the dictates of Burke's attorney, thus forming an alliance with VCU officials, President Rao, Provost Sotiropoulos, whom Belue purportedly represented. Upon receipt of said email, Plaintiff Wilder informed the Attorney

14

General Jason Miyares of the email, stating "This is seeming strange and raises several questions, legal, and etcetera." To the extent that Defendant Belue for all intents and purposes was held out as the legal representative of VCU and its officials, regarding the complaint filed by Plaintiff Wilder against Burke, the email sent by Belue is counter to that information subsequently conveyed by the Attorney General Jason Miyares; He stated that Burke's termination by Dean Gooden was rightful in her official capacity as Dean. The letter that Belue conveyed suggested that Wilder had done harm and injury to Defendant Burke without any itemization and suggestion of what it was that Plaintiff Wilder had done, in fact, or otherwise. At that time, who was Defendant Belue providing legal counsel? Surely not Dean Gooden, certainly not Plaintiff Wilder, but someone?

60. Upon receipt of information from Burke's attorney, stating that Wilder had caused harm to Burke, Belue was under the responsibility and duty to inquire what was it, in fact, that Plaintiff Wilder had done to Burke other than follow the proper processes and protocol of the University.

61. As counsel for the University and Wilder School of Government and Public Affairs, Defendant Belue had the responsibility of interacting directly with Plaintiff Wilder relative to the facts and circumstances of his complaint against Defendant Burke.

62. Defendant Belue has not spoken to or attempted to communicate with Plaintiff Wilder.

63. To the extent that there has been no investigation conducted at the behest of VCU officials and Defendant Belue, no reasons have been provided to Plaintiff Wilder as to the unilateral approach taken by VCU officials and Defendant Belue.

### Violation of First Amendment Rights

64. As a Distinguished Professor of the VCU Faculty, Wilder enjoys First Amendment protection of his free speech rights to engage in public discourse on matters of public interest including discourse relating to politics, religion, art, science, economics, culture, and all the myriad other matters of general or public concern protected by the First Amendment.

65. He, likewise, has the right to not to be required to give voice, sentiment or support to those persons or interests who have dissimilar points of view regarding any subject matter.

### Wilder Has a Valid "Stigma Plus" Due Process Claim

66. VCU officials have joined with Burke in branding Plaintiff a racist sympathizer, effectively lessening his political influence and diminishing his historical achievement and acclaim. To brand Wilder as a racist sympathizer is to effectively administer an academic and political death penalty to Wilder.

67. The actions of the Defendants in their official capacity is damaging to the reputation and integrity of the Wilder School of Government and Public Affairs, and will affect its national ranking, recruitment, and established impartiality, in a negative manner.

### Wilder Has Been Provided No Due Process

68. Once it has been accepted that Wilder has either property or liberty interest at stake, the violation of Due Process Clause automatically follows. Wilder has been provided zero due process.

69. A liberty interest is indicated when a person's good name, reputation honor, or integrity is at stake because of what the government is doing to him. Under what the courts have come to call the "stigma plus" test, a liberty interest sufficient to sustain a procedural due process claim vests in an individual when government officials stigmatize a person by publicly impugning his or her reputation, accompanied by some additional alteration of the person's legal right or status.

70. Defendant Belue's tacit acceptance and adjoining messaging without distinguishing it from any role he was playing independently as to his representation, is complicit.

## VCU HISTORY OF RETALIATION AGAINST WILDER

71. There is a pattern of racism, discrimination, and retaliation at VCU associated with Defendant Wilder's tenure at VCU that will become evident as the trial of this matter matures. This is herein referenced to provide defendants with notice of intent to produce evidence relative thereto.

## Relief Sought

72. Wilder seeks $5 million dollars in compensation against Burke, Rao, Sotiropoulos, and Belue, jointly and severally for the constitutional exercises of freedom of speech and freedom of expressive association, as well as his right to procedural due process.

73. Wilder seeks declaratory and injunctive relief, temporary and permanent, against all Defendants sued in their official capacity (and thus VCU itself) requiring VCU to afford him the protections that are required by policy, procedures, and protocol.

17

74. Wilder seeks attorney's fees and costs against all Defendants should Wilder be a prevailing party under 42 U.S.C. § 1988.

**TRAIL BY JURY IS REQUESTED.**

L. DOUGLAS WILDER, (VSB # 06037)
301 Virginia Street, Unit 601
Richmond, Virginia 23219
(804) 381-3483
ldwilder@vcu.edu